UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICHAEL W. MUNDORFF,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>Defendant. | No. 2:13-CV-0178-JTR<br><br>ORDER GRANTING, IN PART, PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS |

**BEFORE THE COURT** are Cross-Motions for Summary Judgment. ECF No. 18, 19. Attorney Dana Chris Madsen represent Michael W. Mundorff (Plaintiff); Special Assistant United States Attorney Daphne Banay represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff protectively filed an application for a period of disability and Disability Insurance Benefits on October 6, 2010, alleging disability since April

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 1

15, 2010, Tr. 147, due to degenerative joint disease and severe manic depression, Tr. 167.  The application was denied initially and upon reconsideration.  Administrative Law Judge (ALJ) R.J. Payne held a hearing on March 29, 2012, Tr. 36-84, and issued an unfavorable decision on April 17, 2012, Tr. 15-26.  The Appeals Council denied review on March 16, 2013.  Tr. 1-7.  The ALJ's April 2012 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on May 13, 2013.  ECF No. 1, 5.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was born on February 8, 1976, and was 34 years old on the alleged onset date, April 15, 2010.  Tr. 163.  He completed high school and completed truck driving education in June 2001.  Tr. 168.  Plaintiff testified at the administrative hearing that he stopped working in 2010 because he could no longer stand very long without pain and leg numbness.  Tr. 66.  When asked how he spent a typical day, Plaintiff replied he mostly hid from people and explained he did not like to be around people.  Tr. 78-79.  Nevertheless, he indicated he spends two hours a day at the public library playing on the internet and talking with his family.  Tr. 79.  He stated he owned a game boy and considered himself a "gamer" and liked to read books.  Tr. 79-80.  Plaintiff also testified he regularly attended church.  Tr. 81-82.

## ADMINISTRATIVE DECISION

The ALJ found Plaintiff had not engaged in substantial gainful activity since April 15, 2010, the alleged onset date.  Tr. 17.  At step two, the ALJ determined Plaintiff had severe impairments of degenerative joint disease and major depressive disorder.  Tr. 17.  At step three, the ALJ found Plaintiff's severe

impairments did not meet or medically equal a listed impairment. Tr. 17. The ALJ assessed Plaintiff's RFC and determined Plaintiff could perform light exertion level work except he can only occasionally balance, stoop, crouch, crawl, kneel, climb ramps and stairs, but never climb ladders, ropes, or scaffolds and should have no more than superficial contact with the general public. Tr. 20. At step four, the ALJ determined Plaintiff was able to perform his past relevant work as a delivery driver, order filler, machine operator, cashier, and customer service representative. Tr. 24-26. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from April 15, 2010, the alleged onset date, through the date of the decision, April 17, 2012. Tr. 26.

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the Court set out the standard of review:

A district court's order upholding the Commissioner's denial of benefits is reviewed de novo. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035,

1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed de novo, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett,* 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make

an adjustment to other work in the national economy, a finding of "disabled" is made.  20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v).

## ISSUE

The question presented is whether substantial evidence exists to support the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the ALJ erred when assessing Plaintiff's psychological limitations by relying on the opinion of Dr. Moore, a non-treating, non-examining medical source, and discounting the opinions of Drs. Charboneau and Pollack. ECF No. 18 at 9.  Defendant responds that the ALJ provided appropriate rationale for discounting the opinions of Dr. Pollack.  ECF No. 19 at 8.  Defendant, however, failed to address the medical report of Dr. Charboneau and does not mention the testimony of Dr. Moore.  ECF No. 19.

## DISCUSSION

**A.   Physical Limitations**

Plaintiff does not contest the ALJ's RFC determination with respect to his physical capabilities.  The ALJ determined that Plaintiff had the physical RFC to perform light exertion level work with some postural limitations.  Tr. 20.  This determination by the ALJ is supported by substantial evidence and free of legal error.

**B.   Mental Limitations**

Plaintiff contends the ALJ erred with respect to the mental RFC determination in this case.  Plaintiff specifically asserts the ALJ erred by according controlling weight to the medical expert regarding Plaintiff's psychological limitations.  ECF No. 18 at 9-11.

In a disability proceeding, the courts distinguish among the opinions of three types of physicians:  treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the

claimant (nonexamining physicians).  *Lester v. Chater*, 81 F.3d 821, 839 (9th Cir. 1996).  The Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Id*. at 830; *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).  An ALJ's decision to reject the opinion of a treating or examining physician may be based in part on the testimony of a nonexamining medical advisor.  *Magallanes v. Bowen*, 881 F.2d 747, 751-755 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).  However, the ALJ must also have other evidence to support the decision such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the physician's opinion.  *Magallanes*, 881 F.2d at 751-752; *Andrews*, 53 F.3d 1042-1043.

  On December 8, 2010, Gregory J. Charboneau, Ed.D, examined Plaintiff.  Tr. 240-244.  Dr. Charboneau noted Plaintiff was living in a shelter at the time, Plaintiff's fiancée was living at a different shelter, and the couple's young daughter was living with Plaintiff's parents in Florida until the couple could obtain a place to live together.  Tr. 240.  Plaintiff reported he gets up around six a.m., drinks coffee, and then goes to the public library to use the computer.  Tr. 242.  He indicated he obtains and completes job applications, visits with his fiancée daily and volunteers two times a week for the Salvation Army as a bell ringer to collect donations.  He showers and brushes his teeth each night and goes to bed about nine p.m.  Tr. 242.  Dr. Charboneau noted that while Plaintiff reported being previously diagnosed with Severe Manic Depressive Disorder, Plaintiff did not present with Manic symptoms during the clinical interview.  Tr. 243.  Dr. Charboneau nevertheless diagnosed Major Depressive Disorder Severe without Psychotic Features; Rule Out Bipolar Disorder, NOS; Rule Out Pain Disorder Associated with Both Psychological Factors and a General Medical Condition, chronic, Alcohol Dependence, Early Full Remission; and Cannabis Dependence, prior

history, and gave Plaintiff a Global Assessment of Functioning Score of 28.[1]  Tr. 243.

Chart notes from Community Health Association of Spokane (CHAS) indicate Plaintiff was first seen by Douglass Duncan, PA-C, on January 11, 2011, with an initial impression of "moderately severe depression."  Tr. 245-246.  On January 20, 2011, Plaintiff denied depressive symptoms, but his fiancée reported Plaintiff had recurrent suicidal ideation and depression for many years.  Tr. 247.  Mr. Duncan indicated he did not get a sense of a mood disorder (mania or hypomania) at that time.  Tr. 248.  On February 3, 2011, Plaintiff reported experiencing depressed mood, diminished interest or pleasure, fatigue or loss of energy, feelings of guilt or worthlessness, sleep disturbance and thoughts of death or suicide.  Tr. 250.  It was noted he previously denied depressive symptoms, but, on this occasion, agreed with his fiancée that he had experienced depression for many years.  Tr. 250.  On March 21, 2011, Plaintiff presented to Mr. Duncan with his fiancée to discuss his mental health.  Tr. 253.  It was noted that Plaintiff was given medication for his reported symptoms and had "improved control" of his depression.  Tr. 254.  On June 27, 2011, Mr. Duncan stated that Plaintiff had

---

[1] A GAF of 30-21 is characterized as: "Behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)."  Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 1994).  However, the DSM-V has "recommended that the GAF be dropped . . . for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice."  Diagnostic and Statistical Manual of Mental Disorders, 16 (5th ed. 2013).

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 7

started taking Zoloft for his depressive symptoms two months prior to the visit and reported the medication had been effective for him. Tr. 255. It was noted on exam that there was "[n]o unusual anxiety or evidence of depression." Tr. 256. On July 22, 2011, Mr. Duncan indicated "Zoloft has been effective for depression. [He] feels this is [the] right dose for him." Tr. 257. On August 12, 2011, Plaintiff was diagnosed with depression, given a GAF score of 60,[2] and continued on the treatment plan previously prescribed. Tr. 261-262. On September 14, 2011, Plaintiff presented complaining of depression, irritability and anger, Tr. 264; however, on September 23, 2011, Plaintiff was seen by Mr. Duncan with no mention of depressive symptoms, Tr. 267. On October 3, 2011, and November 4, 2011, CHAS chart notes indicate diagnoses of depression and bipolar disorder. Tr. 270, 272. On November 11, 2011, Mr. Duncan noted Plaintiff had been taking Celexa, which Plaintiff reported had helped his depressive symptoms. Tr. 274. On November 18, 2011, Plaintiff reported he had been unable to contact his daughter on her birthday, learned his parents were going to move to Afghanistan with his children for a year, and was feeling more depressed with his medication not seeming to be working. Tr. 276.

On March 26, 2012, Plaintiff was evaluated by Dennis R. Pollack, Ph.D. Tr. 280-289. Plaintiff indicated he did not think he could work because of depression and hip pain. Tr. 281. He described his depression as resulting in his not wanting to do anything or be around anyone. Tr. 281-282. Plaintiff reported he visits with friends three to four times a month; does household chores like washing dishes, sweeping and washing clothes; plays video games; uses Facebook; and reads. Tr. 282. Dr. Pollack indicated the results of the MMPI-2 gave Plaintiff an elevated F-

---

[2] A GAF of 60-51 reflects: Moderate symptoms or moderate difficulty in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994).

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 8

scale at T, suggesting he has a high number of unusual experiences or that he was exaggerating his difficulties. Tr. 284. The results, however, did not invalidate the testing. Tr. 284. Personality testing revealed "an individual who is anxious, tense, nervous and depressed. He worries excessively and has difficulty controlling his anxiety. He tends to overreact to minor stress." Tr. 285. Dr. Pollack diagnosed Major Depressive Disorder; Pain Disorder Associated with Both Psychological Factors and General Medical Condition; Alcohol Dependence, in remission; Cannabis Dependence, in remission; and Rule Out Personality Disorder, and gave Plaintiff a GAF score of 55, indicative of moderate symptoms. Tr. 285. On a Mental Medical Source Statement form, Dr. Pollack checked boxes indicating Plaintiff's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances and ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods were markedly limited. Tr. 287.

Margaret Moore, Ph.D., reviewed the record and testified as a medical expert at the administrative hearing held on March 29, 2012. Tr. 46-55. Dr. Moore indicated the record reflected only two exams, one completed by Dr. Pollack and one completed by Dr. Charboneau, as well as contacts with a social worker at CHAS. Tr. 47, 49. She stated that both exams resulted in a diagnosis of major depressive disorder, which Dr. Moore apparently agreed with. Tr. 47-48, 52. Dr. Moore opined that, overall, Plaintiff is someone who has encountered some significant situational problems, such as a move to Washington State, no job, no money, separation from his significant other in their respective shelter settings and an attempt to get on his feet, but the efforts to get back on his feet have been mostly about trying to receive entitlements, as opposed to getting work or vocational rehabilitation. Tr. 48-49.

///

With respect to Dr. Charboneau's exam, Dr. Moore indicated the GAF score of 28 given by Dr. Charboneau did not make sense, given Plaintiff's functioning at the time. Tr. 49-50. Dr. Moore stated that someone with this level of a GAF score "would undoubtedly be hospitalized." Tr. 49. As to Dr. Pollack's examination, Dr. Moore testified the content of the actual evaluation did not speak to the extreme limitation ratings found by Dr. Pollack. Tr. 50. She noted Plaintiff reported to Dr. Pollack that he has friends, sees his friends, is able to do his chores, goes to the library, plays video games and performs activities of his own choosing and persists at those which belied the marked impairments found by Dr. Pollack. Tr. 50. In addition, Dr. Moore questioned Dr. Pollack's technique on exam and indicated the MMPI completed by Dr. Pollack, while not invalid, produced scores that were "elevated fairly significantly." Tr. 50-51. Dr. Moore opined Plaintiff had no limitations on his activities of daily living, mild to moderate limitations in social functioning, no to mild limitations on concentration, persistence and pace, and no episodes of decompensation. Tr. 52-53.

John Arnold, Ph.D., completed a psychological/psychiatric evaluation form on April 10, 2012. Tr. 298-300. Dr. Arnold diagnosed Major Depressive Disorder, Recurrent Mild to Moderate and Personality Disorder NOS with Cluster B Features and gave Plaintiff a GAF score of 54. Tr. 298. Plaintiff reported to Dr. Arnold that the medication Zoloft helped him feel "normal over half the time." Tr. 299. Dr. Arnold opined that Plaintiff is capable of understanding and carrying out simple instructions, can concentrate for short periods of time, can complete simple tasks without close supervision and not disrupt others, would work best in positions that have minimal interaction with others, can use the bus for transportation, and can recognize hazards and take appropriate precautions. *Id*.

The ALJ's RFC assessment indicates Plaintiff should have no more than superficial contact with the general public, but includes no further limitations stemming from his mental impairments. Tr. 20. In reaching this RFC

determination, the ALJ accorded "significant weight" to the opinions of the non-examining medical expert, Dr. Moore. Tr. 24. The ALJ further specifically rejected portions of the medical reports of Dr. Charboneau and Dr. Pollack based **entirely** on the testimony of Dr. Moore. Tr. 23. However, as indicated above, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830. The ALJ provides no basis, other than the testimony of Dr. Moore, for discounting the opinions of Drs. Charboneau[3] and Pollack.[4] Tr. 23. Furthermore, the ALJ's decision fails to mention the report

---

[3]With regard to Dr. Charboneau, the ALJ stated as follows: "Margaret Moore, Ph.D., who testified at the hearing as a medical expert, called into question Dr. Charbonneau's [sic] reported global assessment score, suggesting that a person with a legitimate GAF score of 28 would have conditions that warrant hospitalization. Dr. Moore opined that Dr. Charbonneau [sic] likely based his conclusion on the claimant's subjective complaints, since this was inconsistent with his findings that the claimant regularly went to the library to read email, and looked for internet job searches." Tr. 23.

[4]The ALJ again relied solely upon Dr. Moore's testimony to discount Dr. Pollack's report: "At the hearing, Dr. Moore questioned the consistency of Dr. Pollack's mental medical source statement evaluating the claimant with marked impairments in his ability to sustain work when his own findings indicated that the claimant demonstrated that he could do chores, perform activities on his own and could choose and persist in those activities. Dr. Moore also questioned the significance of the testing since Dr. Pollack failed to indicate his protocol for performing his testing. Dr. Moore further noted that the claimant had significantly elevated MMPI scores suggestive of strong potential for exaggeration, though they did not rise to the level to be invalidated." Tr. 23.

of Dr. Arnold and fails to indicate the weight accorded to Mr. Duncan.  Tr. 23.  The ALJ erred by relying completely on the opinion of Dr. Moore, a nonexamining medical professional, in assessing Plaintiff's mental RFC.  Consequently, the ALJ's assessment of Plaintiff's mental functioning is not supported by substantial record evidence in this case.

The undersigned notes the medical evidence of record appears to demonstrate Plaintiff's mental impairments do not result in disabling limitations.  However, Plaintiff's mental RFC is an administrative finding, dispositive of the case, which is reserved to the Commissioner and, by delegation of authority, to the ALJ.  SSR 96-5p.  It is thus the responsibility of the ALJ, not this Court, to make a RFC determination.  Accordingly, Plaintiff's mental RFC must be redetermined, on remand, taking into consideration the opinions of the medical professionals noted above, as well as any additional or supplemental evidence relevant to Plaintiff's claim for disability benefits.

## CONCLUSION

Having reviewed the record and the ALJ's conclusions, the undersigned finds the ALJ's decision is not based upon the proper legal standards and is not supported by substantial evidence in the record.  The Court has the discretion to remand the case for additional evidence and finding or to award benefits.  *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose.  *Id*.  Remand is appropriate when additional administrative proceedings could remedy defects.  *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).  In this case, as indicated above, further development is necessary to remedy defects and for a proper determination to be made.

On remand, the ALJ shall reassess Plaintiff's mental RFC, taking into consideration Dr. Charboneau's December 8, 2010, report, Tr. 240-244; the 2011 chart notes from CHAS, Tr. 245-276; Dr. Pollack's March 26, 2012, evaluation,

Tr. 280-289; the evaluation completed by Dr. Arnold on April 10, 2012, Tr. 298-300; and any additional medical evidence relevant to Plaintiff's claim for disability benefits.  The ALJ shall also elicit the testimony of a medical expert at a new administrative hearing to assist the ALJ in formulating a new mental RFC determination.  The ALJ shall present Plaintiff's new RFC assessment to a vocational expert at the new hearing to determine if Plaintiff is capable of performing his past relevant work or any other work existing in sufficient numbers in the national economy.

Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED, in part**.

2. Defendant's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

3. The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this order.

4. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  Judgment shall be entered in favor of **PLAINTIFF** and the file shall be **CLOSED**.

DATED January 22, 2014.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE